IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| **ROBERT LISERIO,** *Plaintiff* | § § § § |
| -vs- | § §  SA-19-CV-01159-XR |
| **COLT OILFIELD SERVICES, LLC, ROY E. (EDDIE) AGUILAR, TOTAL TANK SYSTEMS, LLC, TERRY BOOKER, PETROSTAR SERVICES, LLC,** *Defendants* | § § § § § § § § |

### ORDER ON DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGEMENT

On this date, the Court considered Defendant's Partial Motion for Summary Judgment (ECF No. 100), Plaintiff's Response (ECF No. 101), and Defendant's Reply (ECF No. 102). After careful consideration, the Court issues the following order.

**I.   Background**

**A. Facts**

This Court is familiar with the facts of the case, but due to the complexity of the matter, several facts bear repeating.

On September 16, 2019, Plaintiff Robert Liserio ("Liserio" or "Plaintiff") filed this civil action in the 438th Judicial District Court of Bexar County, Texas. ECF No. 1-1. The dispute arises from Plaintiff's employment at Colt Oilfield Services, LLC.

Defendant Colt, a Texas limited liability company, was formed on October 24, 2008 and conducts "torque and testing" operations for oilfields. ECF 100-1. Devin Nevilles managed Colt's operations.[1] ECF No. 100 ¶ 1. Terry Booker provided consulting services and acquired business

---

[1] Nevilles is not a party in this suit.

for Colt. No. 53 ¶ 17. In late 2009, Nevilles hired Plaintiff as the Wyoming field manager to oversee all torque and testing operations within the state. ECF No. 100 ¶ 1; ECF No. 101-2 at 7. Colt's Certificate of Formation shows that Defendant Eddie Aguilar is its sole member and manager. *Id*.

Herein lies the crux of the dispute: despite Colt's Certificate of Formation showing Aguilar as its sole member and manager, Plaintiff alleges that himself, Devin Nevilles, and Terry Booker were "silent partners" and part owners of Colt.[2] Plaintiff claims that in 2010, Defendant Booker told him that Plaintiff, Booker, and Nevilles were silent partners, that Plaintiff's ownership share of the company was 15%, and that Plaintiff would receive a 15% annual "distribution" pursuant to that ownership interest.[3] ECF No. 1-1 ¶ 15. Plaintiff claims that this conversation is evidenced in, if not memorialized by, three pieces of documentation:

(1) A December 21, 2009 paystub that states "Equity Robert Liserio" in the description category. ECF No. 51 ¶¶ 18–19;

(2) An August 25, 2010 letter from David Ryza, Colt's Chief Financial Officer that is on Colt letterhead and states that "Robert Liserio received a check at the end of each year for his *partnership interest* in Colt Oilfield Services, LLC." ECF No. 53 ¶ 18 (emphasis added); and

(3) A 2010 "Texas Franchise Public Information Report" ("Report") that lists Plaintiff as a "member" of Colt. ECF No. 100-2 ¶ 19.

---

[2] Plaintiff claims that "Aguilar and Plaintiff were named the only members and owners of Colt, leaving out two of the other owners Nevilles and Booker," that Nevilles "did not want to be listed as an owner as a result of issues arising from non-competition agreements and to avoid unnecessary litigation," and that Defendant Booker wanted to be a "silent partner" of Colt. ECF No. 53 ¶ 11. Plaintiff later claims "[Colt's] ownership . . . had been recorded in Aguilar's and Liserio's name." *Id*. ¶ 15. However, the Certificate of Formation reflects only Defendant Aguilar as a member-manager and Plaintiff offers no contradictory documents.

[3] The parties use the terms "owners" and "partners" interchangeably.

After Plaintiff was hired through July 2016, Plaintiff was paid a salary plus the 15% "distribution." ECF No. 53 ¶¶ 23–24.

When Nevilles left Colt in 2016, Plaintiff claims his ownership interest increased to 25%. *Id.* ¶ 33. Plaintiff signed a new contract with Defendant Aguilar (the "2016 Agreement"). The 2016 Agreement does not address Plaintiff's ownership interest but explicitly increases Plaintiff's distribution percentage to 25% and also grants Plaintiff 25% "of the net proceeds upon sale of" Defendant Colt. ECF No. 53 at 42.[4] The 2016 Agreement was notarized. *Id.*

Plaintiff's relation with Defendants soured in late 2016. Plaintiff alleges he did not receive distributions in 2017 or 2018. *Id.* ¶ 61. When Plaintiff confronted Aguilar about the distributions in the spring of 2018, Aguilar allegedly refused to disclose Colt's financial documents, stated that Colt would make no further distributions to Plaintiff, and would not "pay you anything more on our contract." *Id.* ¶ 56. Plaintiff left Colt shortly thereafter. *Id.* ¶ 58.

Defendant Aguilar sold Colt to PetroStar Services, LLC as part of a three-business bundle purchase later in 2018. *Id.* ¶ 62. The sale price was $32,318,140.00. *Id.* ¶ 48. Allegedly, and unbeknownst to Plaintiff, Defendants Booker and Aguilar had marketed Colt for sale in 2017, the year prior. *Id.* ¶ 51. Plaintiff claims that he left Colt in 2018 without knowledge of Colt's impending sale and that Defendants schemed to cause Plaintiff's departure and forfeiture of his 25% interest in Colt's sale proceeds. ECF No. 53 ¶¶ 56-60.

B. Procedural History

After almost two years of litigation, this Court directed the parties to conduct Phase I discovery solely on the issue of whether Plaintiff was an employee or a partner/owner of Colt. The

---

[4] The full text of the 2016 Agreement reads: "I, Roy E. Aguilar, acknowledge that Robert Liserio and his assigns or heirs is entitled to twenty-five (25%) of *all distribution* from Colt Oilfield Services, LLC. The benefactors will also be entitled to twenty-five percent (25%) of the net proceeds upon sale of said company." ECF No. 53 at 42 (emphasis added).

Court limited the relevant timeframe from 2015 to 2018. Text Order (Aug. 14, 2020). Pursuant to that order, Plaintiff filed his Amended Complaint in this Court, which is the operative complaint at this time. ECF No. 53. Plaintiff makes six claims:

(1) Count One: Breach of fiduciary duty or duty of good faith (against all Defendants);

(2) Count Two: Conditioned request for accounting (against all Defendants);

(3) Count Three: Breach of contract (against Defendant Aguilar);

(4) Count Four: Money had and received (against Defendants Aguilar and Booker);

(5) Count Five: Promissory estoppel (against Defendants Aguilar and Booker); and

(6) Count Six Fraud by nondisclosure (against all Defendants).

*Id*. ¶¶ 66-113. Because litigation is limited to Plaintiff's partnership interest, only Counts One and Two are relevant at this time.[5]

Plaintiff claims that Defendants Aguilar and Booker owed him fiduciary duties because all three were partners in Colt. Plaintiff claims these fiduciary duties were breached when Aguilar and Booker refused to account for the 2017-2018 distributions, improperly denied Plaintiff distributions for those years, hid the sale negotiations from Plaintiff, and forced Plaintiff to quit and forfeit his 25% of the Colt sale proceeds. *Id*. ¶¶ 71-73. Both counts seek damages for distributions owed in 2017 and 2018 under the 2016 Agreement, as well as for 25% of Colt's sale price. *Id*. ¶ 68-72. Plaintiff also seeks punitive damages. *Id*. at ¶ 74.

Procedurally, the only issue before the Court is whether there is a genuine issue of material fact as to whether Plaintiff Liserio was an employee or an owner/partner of Colt from 2015 to 2018. Text Order (Aug. 14, 2020). *Id*. If Plaintiff was a mere employee, his claims for breach of fiduciary duty and the conditioned request for accounting fail because those claims require a

---

[5] Counts Three through Six are dependent on the parties' contractual relationship, as evidenced in the 2016 Agreement, and not upon the existence of a partnership.

partnership interest in the company.

## II. Discussion

### A. Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of

the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

A partnership is "an association of two or more persons to carry on a business for profit as owners," regardless of whether: (1) the persons intend to create a partnership; or (2) the association is called a partnership, joint venture, or other name. Tex. Bus. Orgs. Code Ann. § 152.051.

Whether a partnership exists requires an examination of the totality of the circumstances. Texas law establishes five factors that indicate whether persons have created a partnership, although no one factor is decisive: (1) the right to receive a share of profits of the business; (2) an expression of intent to be partners in the business; (3) the right to participate in control of the business; (4) an agreement to share: (a) losses of the business; or (b) liability for claims by third parties against the business; (5) agreement to contribute or contribution of money to the business. Tex. Bus. Orgs. Code § 152.052(a)(1)-(5). However, the receipt of, or right to receive, a share of profits as payment of wages or other compensation to an employee does not indicate that a person

is a partner. *Id*. § 152.052(b)(1)(B). Finally, a "representation or other conduct indicating that a person is a partner in an existing partnership, if that is not the case, does not of itself make that person a partner in the partnership." Tex. Bus. Orgs. Code Ann. § 152.054.

1. **The Right to Receive a Share of Profits**

Both parties agree that Defendants and Plaintiff shared profits of the business. ECF No. 100 at 9; ECF No. 101 at 3-4.

However, sharing profits does not necessarily make someone a partner. § 152.052(b)(1)(B). Moreover, it appears that Colt paid Plaintiff as it would pay an employee. For example, Plaintiff testified that he received his distributions "sometimes" through Form 1099s, typically reserved for independent contractors, and sometimes through the typical payroll process. *Id*. Further, Plaintiff testified that he never received a K-1 form from Colt, the IRS form for partnership interests. ECF No. 100-3 at 31. Corporations should report partner interests through K-1 forms; the absence of such forms is thus telling evidence.

Although Plaintiff shared in profits, his own testimony that he received the distributions through the typical payroll process indicates that such distributions were made as part of his compensation package as an employee and not as a partner.

2. **Expression of an Intent to be Partners**

Plaintiff cites to Devin Nevilles' and Defendant Aguilar's depositions, arguing that their testimony demonstrates that "in all meaningful ways, Aguilar, Nevilles, and Colt intended to partner with Plaintiff." ECF No. 101 at 4.

An objective reading of the depositions does not support Plaintiff's conclusion. Nevilles' deposition indicates, at best, that Nevilles spoke with Aguilar generally about hiring Nevilles' former employees. It does not support Plaintiff's claim that Nevilles and Aguilar specifically

discussed making Plaintiff an owner.[6] Moreover, Aguilar called Plaintiff a "special case employee" but prefaced it by saying that "Robert [Liserio] didn't have any say-so when money was pulled." ECF No. 101-4 at 13. Instead of indicating that Aguilar thought of Plaintiff as having a partner's role, the cited deposition indicates Plaintiff was excluded from accessing the company's finances. Plaintiff's argument is unpersuasive.

Next, Plaintiff offers the August 2015 letter and the 2010 Report as evidence that he partially owned Colt. ECF No. 53 at 6-8. These documents are insufficient to raise a genuine dispute of fact.

First, as Defendant points out, neither document evinces Aguilar's intent to convey an ownership interest to Plaintiff. It is the *partner*'s intent that matters; because Aguilar is the only undisputed partner, only he can convey an ownership interest in Colt. There is simply no evidence that Aguilar expressed his intent to partner with Plaintiff. Plaintiff's own deposition shows, instead, that Plaintiff never spoke with Aguilar about Plaintiff's ownership or operational role.[7]

Second, both documents were created by David Ryza, Colt's Chief Financial Officer. ECF No. 101-4 at 7. The letter and Report indicate, at best, that Ryza believed Plaintiff had an ownership interest in Colt. However, Ryza was not a partner in Colt, either documented or silent. Therefore, Ryza's understanding is inconsequential. Moreover, Plaintiff offers no evidence that Ryza was authorized to extend any partnership interests on Aguilar's behalf.

---

[6] ECF No. 101-2 (Deposition of Devin Nevilles) (Q: And you had mentioned that you didn't speak to Eddie about personnel needed to -- to start the company. And I -- I -- I think what I was really trying to ask is, were there any discussions about bringing Robert onboard with Eddie when the operations and the formation of the company were being discussed? A: . . . I brought guys that worked for me prior, so naturally, I'm sure we had a conversation. I don't remember the extent of it.")

[7] Plaintiff submitted an affidavit with his Response in which he claims Aguilar, Nevilles, and Booker approached him with a partnership offer in 2009. Plaintiff does not explain the inconsistencies between that statement and his earlier sworn testimony that he either did not speak with Aguilar or that he didn't remember whether the pair met at all. ECF No. 101-3 at 24. *See S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489 (5th Cir. 1996).

Finally, as Defendants point out, both documents were created in 2009 or 2010, very early in the company's history. Defendants note that Colt has been treated as a single-member LLC for tax purposes since its formation. ECF No. 100-2 at 9. All earnings were reported on Defendant Aguilar's tax return. *Id*. In contrast, Plaintiff testified that he never received a Form K-1 from Colt, the form used for partners to record their ownership interests. ECF No. 1-3 at 31. If Plaintiff was a member of Colt, a Schedule K should have been issued.

Even viewing this evidence in the light most favorable to the nonmovant, there is insufficient evidence that any authorized representative of Defendant Colt expressed an intent to partner with Plaintiff.

### 3. The Right to Participate in Control of the Business

The right to control a business is the right to make executive decisions. *Ingram v. Deere,* 288 S.W.3d 886, 900 (Tex. 2009) (citing *Brown v. Cole,* 155 Tex. 624, 291 S.W.2d 704, 710 (1956)); *Stephens v. Three Finger Black Shale P'ship,* 580 S.W.3d 687 (Tex. App. 2019). This includes managing business operations, viewing and managing the books, writing checks, and controlling assets. *Id*. (collecting cases).

Plaintiff admits he had no authority to write checks or access Colt's control books.[8] ECF No. 101-3 at 29, 25. Plaintiff testified that he never spoke with Aguilar about Plaintiff's overarching role in Colt's operations. *Id*. at 24. Plaintiff received no monthly reports on Colt's performance, attended no meetings with banks or received bank statements regarding Colt, and took out no lines of credit on behalf of Colt. *Id*. at 25-27. Although Plaintiff was a field manager, there is no indication that he had any control over Colt's executive functioning.

---

[8] Plaintiff alleges he "was in charge of revenue while working for Colt." ECF No. 101 at 9. He cites to "Deposition of Robert Liserio, pg. 169, Ln.11-14" for this proposition. Plaintiff's deposition is located at ECF No. 101-3 but does not contain a page 169. This Court cannot verify this claim.

This factor weighs strongly against the existence of a partnership.

### 4. An Agreement to Share Business Losses or Liability by Third Parties Against the Business

Although an agreement to share losses is not a necessary element of a partnership, it is nonetheless indicative of one. Tex. Bus. Orgs. Code Ann. § 152.052(a-c). Plaintiff maintains that he agreed to be liable for any of Colt's losses or liabilities by not rejecting "the Partnership Confirmation provided to him by Colt." ECF No. 101 at 10. As discussed above, *supra* Section II(A)(2), Defendants did not express nor confirm Plaintiff's partnership interest. Nor is there an affirmative agreement for Plaintiff to share Colt's losses or be responsible for Colt's liabilities. ECF No. 100 at 11. Moreover, Plaintiff's actions do not indicate he implicitly assumed this responsibility; Plaintiff's deposition indicates that he never signed "any personal guarantees for Colt" and took out no lines of credit on Colt's behalf. ECF No. 100-3 at 25–27.

Ultimately, there is no evidence that Plaintiff was prepared, or expected, to share Colt's losses or liabilities. This factor weighs against finding a partnership.

### 5. Agreement to Contribute to the Business:

An agreement to contribute money or property to the business is indicative of a partnership. § 152.052(a)(5).

Plaintiff claims that he "furnished equipment and vehicles" to Colt. ECF No. 53 ¶ 45. Plaintiff's deposition clarifies that his wife purchased approximately five trucks when Colt struggled financially and that these trucks were used exclusively for Colt. ECF No. 101-3 at 27–28. Defendants countered that "without any evidence Plaintiff himself contributed money or property," Plaintiff made no contributions to Colt. This Court agrees.

Plaintiff argues that he contributed to the business as a "key man ensuring that Colt could operate." ECF No. 102 at 10. While likely true, Plaintiff has offered no evidence distinguishing his value as an employee from the contributions of a partner. *See Ingram*, 288 S.W.3d at 903 ("Employees may contribute to business endeavors by lending their time and reputation, but that is not a contribution to the venture indicative of a partnership interest."). Relevant to this discussion is the fact that Plaintiff was hired after Colt was formed. This indicates that his services were not essential to the formation of the company in the way that a partner's service contributions would be. Ultimately, Plaintiff's technical skill is not indicative of his partnership interest but instead of his value as an employee.

Taking the facts in the light most favorable to the Plaintiff, it appears that Plaintiff shared Colt's profits and was referred to as a "partner" on several documents completed by the company's CFO during the first two years of its formation. However, it is possible to both share in profits and be referred by unauthorized persons as a "partner," but nonetheless not be a member of a partnership. Furthermore, Plaintiff had no affirmative agreement to share in the losses of the company, made no contributions to Colt's formation and, most importantly, had no say in the company's executive operations. Although Colt's employees sloppily referred to Plaintiff as a partner on several occasions, the totality of the circumstance indicates that Plaintiff was a mere employee, albeit a valuable one, and not a partner or owner of Colt.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Partial Summary Judgment (ECF No. 100) is **GRANTED**. Counts One and Two of Plaintiff's Amended Complaint (ECF No. 53) are **DISMISSED**. Plaintiff may proceed with Counts Three through Six of the Amended Complaint.

It is so **ORDERED**.

**SIGNED** this 28th day of October, 2022.

                                                                        _____
Xavier Rodriguez
United States District Judge